Richard D. WATSON, Plaintiff–Appellant,

v.

AMEDCO STEEL, INCORPORATED, doing business as Amedco Casket Stamping Company, Defendant–Appellee.

No. 92–3947.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 22, 1994.

Decided July 11, 1994.

Thomas F. Phalen, Jr., Logothetis & Pence, Cincinnati, OH, Dena E. Benson (argued), Law Offices of Dena Elliott Benson, Lima, OH, for plaintiff-appellant.

Jack H. Rogers (argued), Barnes & Thornburg, Indianapolis, IN, for defendant-appellee.

Before POSNER, Chief Judge, and COFFEY and ROVNER, Circuit Judges.

ROVNER, Circuit Judge.

After a five-day trial, a jury found in favor of defendant Amedco Steel, Inc. ("Amedco") on Richard Watson's claim under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634. In this appeal, Watson challenges neither the jury's verdict nor the sufficiency of the evidence supporting it. He focuses instead on the district court's pretrial denial of his motion for summary judgment. Watson maintains that if the district court had correctly interpreted our precedents, it would have granted summary judgment in his favor. Because we conclude that Watson cannot challenge the denial of summary judgment after a full trial on the merits of his claim, we affirm the judgment below.

## I. BACKGROUND

On November 14, 1986, at the age of forty-four, Watson was terminated from his position as the superintendent of Amedco's tool and die and maintenance departments. He had been employed by Amedco since 1982, when that company purchased the casket parts manufacturing plant in Richmond, Indiana where Watson had worked since 1964.[1] Watson's termination resulted from a reduction in Amedco's work force that took place after the company purchased its competitor, Wallace Metal Products of Anniston, Alabama ("Wallace"). A former Wallace principal, Ian MacKenzie, became general manager of the new Amedco division that resulted from the transaction, and he was charged with facilitating the integration of the two companies by consolidating overlapping product lines and eliminating unnecessary personnel. In March 1986, MacKenzie appointed Ray Mayberry, another former Wallace employee, to the position of plant engineer, which provided Mayberry

---

1. When Amedco purchased the plant, it apparently terminated most of the existing employees, but it eventually rehired some, including Watson.

with supervisory responsibility over major tool and die work at the Richmond, Indiana and Anniston, Alabama plants. As plant engineer, Mayberry assumed some of the supervisory responsibilities at the Richmond facility that previously had been assigned to Watson.

Throughout the summer of 1986, MacKenzie gradually reduced the Richmond plant's hourly payroll, and by August, he was considering the elimination of several salaried positions. He began at the top, firing the plant's president and promoting Mayberry to that position in November 1986. MacKenzie then directed that his new president recommend further reductions in the plant's salaried labor force. When Mayberry assured MacKenzie that he could fulfill Watson's responsibilities himself, MacKenzie eliminated Watson's salaried position and terminated his employment. Watson was forty-four at the time, whereas Mayberry was forty-six.

The week following Watson's termination, Mayberry promoted two younger, hourly employees (Paul Heis and Jerry Morefield) to group leader positions in their respective departments. These "group leader" positions had not existed previously. As group leaders, Heis and Morefield remained hourly employees, but they received an increase in their hourly wage. As group leader of the tool and die and maintenance departments, Heis gradually took on some of Watson's former tasks, although he never was given the administrative authority that Watson possessed as a superintendent. In large measure, Heis acted as an intermediary between Mayberry and the employees in his departments. Watson maintains that he was capable of performing either group leader position but that he was never offered that opportunity.

In December 1986, Amedco recalled another younger employee, Terry Hebenstreit, from an earlier lay-off. Hebenstreit initially was assigned to the pressroom, where Watson had once been foreman, but he gradually began to perform maintenance work. By May 1988, Hebenstreit was working full-time in the plant's maintenance department.

Watson maintains that he also was capable of performing Hebenstreit's responsibilities.

After exhausting his remedies with the Equal Employment Opportunity Commission, Watson filed this suit in federal court under the ADEA, alleging an unlawful discharge on the basis of age. Amedco defended on the ground that Watson's position had been eliminated pursuant to a reduction in force because his responsibilities had duplicated those of other salaried personnel. When Amedco moved for summary judgment, Watson responded with a cross-motion challenging the adequacy of Amedco's proffered reason for the discharge. Watson maintained that Amedco's stated reason was insufficient as a matter of law because even if true, the company still had not articulated a legitimate reason for terminating him, as opposed to a younger co-worker whose job he could perform. The district court was unwilling to conclude that an explanation addressed solely to the plaintiff's position, as opposed to characteristics of his job performance, was inadequate as a matter of law. Proceeding then to the issue of pretext, the court found that factual issues predominated, and it accordingly set the case for trial, where a jury returned a verdict for Amedco. Significantly, Watson never renewed at trial his challenge to the legitimacy of Amedco's stated reason for the discharge by moving for judgment as a matter of law either before or after the jury's verdict.

## II. DISCUSSION

We are faced today with the curious circumstance of a plaintiff who appeals after an unfavorable jury verdict but who does not contest that verdict. Instead, Watson's briefs adamantly state that his lone challenge on this appeal is to the district court's denial of his motion for summary judgment. Indeed, Watson's brief chides Amedco for even addressing the sufficiency of the evidence supporting the jury's verdict at trial, explaining that that issue "is not directly appealed." (Watson Reply Br. at 2; *see also id.* at 11 n. 5 & 24.) Watson instead affirms that the "sole issue on this appeal is whether Amedco gave an inadequate response as a matter of law to Watson's prima facie case." (Watson

Br. at 12.) Yet the response at issue is not the company's response at trial, but its response to Watson's prima facie case *on summary judgment.* (*Id.*)[2] Thus, although the district court conducted a full trial on the merits in which a jury found that Watson's age was not a determining factor in his discharge, Watson now asks that we reverse that verdict and enter judgment in his favor because the district court should have granted his motion for summary judgment prior to trial. For the reasons that follow, we must decline his request.

### A.

As a general rule, the denial of a motion for summary judgment is not subject to review once the district court has conducted a full trial on the merits of a claim. *See EEOC v. Sears, Roebuck & Co.*, 839 F.2d 302, 353 n. 55 (7th Cir.1988); *Locricchio v. Legal Servs. Corp.*, 833 F.2d 1352, 1358 (9th Cir. 1987); *see also generally* Annotation, *Reviewability of Order Denying Motion for Summary Judgment,* 15 A.L.R.3d 899, 922 (1967 & Supp.1993). The denial of summary judgment is not appealable when entered as an interlocutory order (*Switzerland Cheese Ass'n, Inc. v. E. Horne's Mkt., Inc.*, 385 U.S. 23, 25, 87 S.Ct. 193, 195, 17 L.Ed.2d 23 (1966); *Sears, Roebuck,* 839 F.2d at 353 n. 55; *Locricchio,* 833 F.2d at 1358), and after trial, whether or not summary judgment should have been granted generally becomes moot. A trial court's task on summary judgment is specific and limited—"to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.

1994). In denying such a motion, the court "decides only one thing—that the case should go to trial;" that denial "does not settle or even tentatively decide anything about the merits of the claim." *Switzerland Cheese,* 385 U.S. at 25, 87 S.Ct. at 195; *see also Glaros v. H.H. Robertson Co.*, 797 F.2d 1564, 1573 (Fed.Cir.1986), *cert. dismissed,* 479 U.S. 1072, 107 S.Ct. 1262, 94 L.Ed.2d 124 (1987). For this reason, the overwhelming majority of reviewing courts have held that they need not consider the propriety of an order denying summary judgment once there has been a full trial on the merits below. *See, e.g., Black v. J.I. Case Co.*, 22 F.3d 568, 570–71 (5th Cir.1994); *Johnson Int'l Co. v. Jackson Nat'l Life Ins. Co.*, 19 F.3d 431, 434 (8th Cir.1994); *Lama v. Borras,* 16 F.3d 473, 476 n. 5 (1st Cir.1994); *Whalen v. Unit Rig, Inc.*, 974 F.2d 1248, 1250–51 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1417, 122 L.Ed.2d 787 (1993); *Bottineau Farmers Elevator v. Woodward–Clyde Consultants,* 963 F.2d 1064, 1068 n. 5 (8th Cir.1992) ("Denial of summary judgment is not properly reviewable on appeal from a final judgment entered after a full trial on the merits"); *Jarrett v. Epperly,* 896 F.2d 1013, 1016 (6th Cir.1990) ("where summary judgment is denied and the movant subsequently loses after a full trial on the merits, the denial of summary judgment may not be appealed"); *Holley v. Northrop Worldwide Aircraft Servs., Inc.,* 835 F.2d 1375, 1377–78 (11th Cir.1988) ("Summary judgment was not intended to be a bomb planted within the litigation at its early stages and exploded on appeal"); *Locricchio,* 833 F.2d at 1358–59;[3] *Glaros,* 797 F.2d at 1573–74 & n. 14. Indeed, a number of those courts indicated that they could find

---

**2.** *See also* Watson Reply Br. at 2–3 ("If the court finds in favor of Watson on his sole issue on appeal, then the facts presented to the jury become moot because any disputes of fact at summary judgment or at trial were relevant only to the credibility assessment stage which cannot be reached if the rebuttal evidence is inadequate as a matter of law"); *id.* at 7 ("Watson is appealing the denial of summary judgment because of a legal issue which involved no unresolved issues of fact; he is not appealing the jury's verdict. If this court rules that his summary judgment motion should have been granted, then clearly the jury's verdict cannot stand").

**3.** In *Locricchio,* the Ninth Circuit advanced the following rationale for the majority rule, which we too find persuasive:

> To be sure, the party moving for summary judgment suffers an injustice if his motion is improperly denied. This is true even if the jury decides in his favor. The injustice arguably is greater when the verdict goes against him. However, we believe it would be even more unjust to deprive a party of a jury verdict after the evidence was fully presented, on the basis of an appellate court's review of whether the pleadings and affidavits at the time of the summary judgment motion demonstrated the need for a trial.

no case in which a reviewing court had overturned a jury verdict on the ground that the appellant should have succeeded on summary judgment. *Whalen,* 974 F.2d at 1251 n. 4; *Locricchio,* 833 F.2d at 1359; *Glaros,* 797 F.2d at 1573 n. 14.[4]

We by and large have followed the majority rule disfavoring review of summary judgment denials after trial, although we have sent conflicting signals. In *EEOC v. Sears, Roebuck & Co.,* we explained that the denial of summary judgment typically becomes moot once the parties proceed to trial. 839 F.2d at 353 n. 55. We recognized a limited exception to this rule, however, in the "rare case" in which a plaintiff notifies the district court that it intends to abandon certain claims at trial if summary judgment as to those claims is denied. In *Sears, Roebuck,* the district court denied summary judgment and therefore dismissed the affected claims, but conducted a trial on the claims that remained. *Id.* When the plaintiff subsequently appealed, after final judgment, from the denial of summary judgment on the dismissed claims, we agreed to hear the appeal, finding that the denial in that instance "had the effect of ending any consideration of the claim[s] in [the] district court." *Id.*[5] Be-

cause the denial of a motion for summary judgment generally would not have that effect, *Sears, Roebuck* did not articulate a rule in this circuit that departs from the majority rule discussed above. Instead, that decision established a limited exception to the majority rule in a highly unusual procedural setting.[6]

■ Yet we clearly strayed from the majority rule in *Trustees of Indiana Univ. v. Aetna Cas. & Sur. Co.,* 920 F.2d 429, 433 (7th Cir.1990), when we relied on *Sears, Roebuck* in reviewing the denial of summary judgment after a trial. To the extent *Trustees* extends the *Sears, Roebuck* exception and suggests that a denial of summary judgment may always be reviewed after a trial in which the same issue is presented, we disavow that proposition today.[7] Absent an extraordinary circumstance such as the one encountered in *Sears, Roebuck,* we will not review the denial of a motion for summary judgment once the district court has conducted a full trial on the merits of a claim. After trial, the merits should be judged in relation to the fully-developed record emerging from that trial. *Johnson Int'l Co.,* 19 F.3d at 434. We will not at that point step back in time to determine whether a different judgment may have been warranted on the record at summary judgment.

---

833 F.2d at 1359; *see also Johnson Int'l Co.,* 19 F.3d at 434 n. 4; *Jarrett,* 896 F.2d at 1016 n. 1 (finding *Locricchio* reasoning "persuasive").

**4.** Watson has not identified such a case, and we also have been unable to locate one.

**5.** We also observed that the denial in that circumstance "differed from a pretrial adjudication in that the district court released the order denying summary judgment on the same day that it released the opinion on the merits of the case," meaning that "there were no outstanding claims in connection with the action and the action had been terminated by a final judgment." *Id.*

**6.** Indeed, we observed that the EEOC's trial strategy was "risky" and that we had been unable to locate a single case in which a party had employed a similar strategy. *Id.*

**7.** Although *Trustees* correctly indicates that the appeal from a final judgment " 'brings up for review all decisions that shaped the contours of that judgment' " (920 F.2d at 433 (quoting *Kamen v. Kemper Fin. Servs., Inc.,* 908 F.2d 1338, 1341 (7th Cir.1990), *rev'd on other grounds,* 500

U.S. 90, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991)), that does not speak directly to whether a reviewing court should address the denial of a motion for summary judgment after a trial. *See Jarrett,* 896 F.2d at 1016 n. 1. Indeed, *Kamen* involved the dismissal of a claim early in the litigation which the plaintiff subsequently appealed after her remaining claim had been litigated to final judgment. The defendants argued that the earlier dismissal order could not be appealed because it was not a part of the "final decision" identified in the notice of appeal. 908 F.2d at 1341. *Kamen* quite rightly rejected that argument, finding that the validity of the district court's partial dismissal order had been preserved below and that it had indeed "shaped the contours" of the final judgment. *Id.* But *Kamen* says nothing about the propriety of reviewing a denial of summary judgment after a trial on the same claim.

Because we depart from *Trustees* today, we circulated this opinion to all judges of this court in regular active service pursuant to Circuit Rule 40(f). No judge desired to rehear this case en banc.

### B.

Apparently anticipating today's holding, Watson likens his case to *Sears, Roebuck* and argues that as in that case, the issue appealed here never went to trial because of the district court's erroneous ruling on summary judgment. Although the district judge's summary judgment decision may have affected some of her subsequent rulings at trial, that decision did not have the effect, as it did in *Sears, Roebuck,* "of ending any consideration of the claim in district court." 839 F.2d at 353 n. 55. Instead, at trial, just as on summary judgment, Amedco was required to come forward with a legitimate, non-discriminatory reason for its employment decision in order to rebut Watson's prima facie case of age discrimination. *See, e.g., McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Oxman v. WLS–TV,* 12 F.3d 652, 657 (7th Cir.1993). The adequacy of that response should have been as much an issue at trial as it was on summary judgment.

Watson argued on summary judgment that Amedco's response was insufficient as a matter of law because the company had relied solely on the elimination of Watson's position and had not explained why Watson had been terminated, as opposed to younger employees whose responsibilities he could perform. Amedco's response to the prima facie case was identical at trial, yet Watson never renewed his argument that the response was inadequate. In order to preserve such an issue at trial, Watson should have moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a)(1) at the close of Amedco's case or at the conclusion of all the evidence, and then renewed that motion after the jury's verdict pursuant to Rule 50(b). *Cf. St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2748, 125 L.Ed.2d 407 (1993) (if defendant fails to meet its burden of production, the "court must award judgment to the plaintiff as a matter of law" under Rule 50(a)(1)). But here, Watson never moved for judgment as a matter of law at any point in the trial. We agree with the Tenth Circuit that the proper redress for the erroneous denial of summary judgment "would not be through appeal of that denial but through subsequent motions for judgment as a matter of law and appellate review of those motions if they were denied." *Whalen,* 974 F.2d at 1251; *see also Holley,* 835 F.2d at 1378 (distinguishing appeal from denial of summary judgment from case where the appellant made a motion for directed verdict and then for judgment notwithstanding the verdict at trial); *Glaros,* 797 F.2d at 1574. Because this circuit will not permit the appeal of an issue that was not properly raised before the district court at trial in a motion for judgment as a matter of law (*see, e.g., Hudak v. Jepsen of Illinois,* 982 F.2d 249, 250 (7th Cir.1992); *Parts and Elec. Motors, Inc. v. Sterling Elec., Inc.,* 826 F.2d 712, 716 (7th Cir.1987); *McKinnon v. City of Berwyn,* 750 F.2d 1383, 1387–88 (7th Cir.1984)), it would be odd indeed for us to consider whether summary judgment was properly denied in a case where the identical issue was presented at trial and the requisite motions for judgment as a matter of law were not made. *See Black,* 22 F.3d at 571–72.

Moreover, review of the issue presented here would be particularly inappropriate in light of our repeated admonitions that the *McDonnell Douglas* burden-shifting framework falls away once there has been a jury trial and verdict. In *Castleman v. Acme Boot Co.,* 959 F.2d 1417, 1421 (7th Cir.1992), we explained that "[o]nce a trial has been conducted, [we] will not decide whether a plaintiff has met her burden of making a prima facie case, *or whether a defendant has met the alternate burden of producing evidence of a legitimate rationale for discharge.*" (Emphasis added); *see also Mojica v. Gannett Co.,* 7 F.3d 552, 561 (7th Cir.1993) (en banc) ("once the plaintiff prevails before a jury, the method of proof becomes extraneous"), *cert. denied,* —— U.S. ——, 114 S.Ct. 1643, 128 L.Ed.2d 363 (1994); *EEOC v. Century Broadcasting Corp.,* 957 F.2d 1446, 1455 (7th Cir.1992); *Grohs v. Gold Bond Bldg. Prods.,* 859 F.2d 1283, 1286 (7th Cir.1988) ("Once the case has been tried ..., the rules about the prima facie case, defendant's response and methods of proof no longer are relevant"), *cert. denied,* 490 U.S. 1036, 109 S.Ct. 1934, 104 L.Ed.2d 405 (1989).

We consider at that stage *only* whether the record supports the jury's resolution of the ultimate question of intentional discrimination. *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 714–15, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983); *see also St. Mary's Honor Ctr.,* —— U.S. at ——, 113 S.Ct. at 2749; *Castleman,* 959 F.2d at 1421; *Perfetti v. First Nat'l Bank,* 950 F.2d 449, 450 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2995, 120 L.Ed.2d 871 (1992); *Hybert v. Hearst Corp.,* 900 F.2d 1050, 1054 (7th Cir.1990); *Grohs,* 859 F.2d at 1286.

That of course leaves Watson with no opportunity to obtain review of the district court's finding that Amedco's response was legally adequate. Yet Watson's predicament is not inconsistent with the purpose underlying the *McDonnell Douglas* burden-shifting framework. That framework operates as " 'a sensible, orderly way to evaluate the evidence' " relating to the elusive question of intentional discrimination and was " 'never intended to be rigid, mechanized, or ritualistic.' " *Aikens,* 460 U.S. at 715, 103 S.Ct. at 1482 (quoting *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978)); *see also St. Mary's Honor Ctr.,* —— U.S. at ——, 113 S.Ct. at 2755 ("the *McDonnell Douglas* presumption is a *procedural* device, designed only to establish an order of proof and production" (emphasis in original)); *King v. General Elec. Co.,* 960 F.2d 617, 622 (7th Cir.1992). In that sense, so long as the evidence supports the jury's ultimate conclusion as to the presence or absence of intentional discrimination, Watson cannot complain of our refusal to inquire specifically into the sufficiency of Amedco's response. The fact-finder's ultimate task in discrimination cases must remain foremost in our minds; we must not apply the legal rules designed to facilitate that task in a way that would complicate it further. *Yowell v. United States Postal Serv.,* 810 F.2d 644, 647 (7th Cir.1987); *see also St. Mary's Honor Ctr.,* —— U.S. at ——, 113 S.Ct. at 2756; *Aikens,* 460 U.S. at 716, 103 S.Ct. at 1482.

The jury here found that Watson's age was not a determining factor in Amedco's deci-sion to terminate his employment. That conclusion has gone unchallenged before the trial court and on this appeal. We have no basis for setting it aside.

AFFIRMED.