Terry R. ALLAHAR and Rizalina M.
Allahar, Plaintiffs–Appellees,
Cross–Appellants,

v.

Joseph ZAHORA, Defendant–Appellant,
Cross–Appellee.

Nos. 94–1961 and 94–1993.

United States Court of Appeals,
Seventh Circuit.

Argued April 11, 1995.

Decided July 10, 1995.

Michael A. Reiter, James W. Marks (argued), Edward A. Voci, Leadership Council for Metropolitan Open Communities, Chicago, IL, for plaintiffs-appellees.

George C. Pontikes (argued), Pontikes & Associates, Chicago, IL, Michael S. Welzien, Berkeley, IL, for defendant-appellant.

Before CUDAHY, ESCHBACH and COFFEY, Circuit Judges.

CUDAHY, Circuit Judge.

Joseph Zahora (Zahora) refused to sell his home to Terry and Rizalina Allahar (the Allahars) on the basis of their race. The Allahars brought suit and a jury found in their favor, awarding both compensatory and punitive damages. Zahora now appeals on the ground that the district court should not have denied his motion for summary judgment based on *res judicata*. The Allahars cross-appeal, contesting the district court's decision to set aside the punitive damages award. We affirm the district court on both claims.

## I. FACTS

This case arises from a real estate contract between the Allahars and Joseph Zahora. On July 20, 1992, the Allahars entered into a contract with Joseph Zahora to purchase Zahora's house. Several weeks later, after the contract had been signed but before the closing date, Zahora phoned Terry Allahar and declared his intention to breach the contract because he "talked with [his] neighbors and they don't want niggers on the block." R.O.A., Tr. 51–62. When Mr. Allahar responded "I'm not a nigger, I'm an Indian," Zahora responded, "[w]hat's the difference" and hung up. R.O.A., Tr. 51–62. Zahora followed these statements with a letter informing the Allahars that he considered their real estate agreement "null and void for various reasons." R.O.A., Tr. 63. He then refused to sell the house to the Allahars on the closing date.

In response to Zahora's behavior, the Allahars first filed an action with the Illinois Department of Human Rights (IDHR), claiming that their civil rights had been violated by Zahora. Shortly thereafter, the Allahars also filed suit in federal district court under 42 U.S.C. §§ 1981 and 1982. The district court issued a temporary injunction forbidding Zahora from selling his house to anyone other than the Allahars.

Not long after the temporary injunction was issued, the Allahars decided to pursue their case solely in the district court and notified the IDHR that they intended to withdraw their claim. However, despite repeated attempts by the IDHR to contact the Allahars, the Allahars never completed the paperwork attendant to a voluntary withdrawal. Consequently, on September 15, 1993, the IDHR issued a Notice of Dismissal

for Failure to Cooperate, dismissing the Allahars' complaint for failure to comply with the IDHR's Administrative Closure provisions. However, the district court case continued to proceed.

On October 16, 1992, while the district court case was still pending, Zahora finally sold his house to the Allahars for the agreed price of $75,000. The case for damages continued, however, and a jury trial was scheduled for January of 1994. Four days before the trial was to commence, Zahora filed an Emergency Motion for Summary Judgment, claiming that the IDHR's Order of Dismissal barred the Allahars' district court claim under the doctrine of *res judicata.* Zahora argued that the dismissal constituted an adjudication on the merits of the same claim pending before the district court. The court denied the motion and the case proceeded to trial. At no time did Zahora move for a directed verdict or judgment notwithstanding the verdict on the *res judicata* issue. Nor was the *res judicata* issue raised at trial or at again any time prior to this appeal.

After a two day trial, the jury returned a verdict for the Allahars, awarding $10,000 in compensatory damages ($5,000 for each plaintiff) and $7,500 in punitive damages. The district court judge then set aside the jury award for punitive damages but entered the award for compensatory damages and $20,000 in attorney's fees.

Zahora now appeals, claiming that the district court erred in denying his motion for summary judgment. The Allahars cross-appeal to contest the district court's setting aside of the punitive damages.

## II. RES JUDICATA

Zahora claims that the IDHR's dismissal of the claim was an adjudication on the merits, and as such bars the Allahars' district court action based on the same claim. The Allahars argue that the dismissal of the IDHR case does not affect their claim in federal court and that Zahora waived his right to appeal the *res judicata* issue because he failed to reserve the issue for appeal.

■ It is well established that an order denying summary judgment is ordinarily not appealable after a trial on the merits. *See, e.g., Watson v. Amedco Steel, Inc.,* 29 F.3d 274, 277 (7th Cir.1994); *E.E.O.C. v. Sears, Roebuck & Co.,* 839 F.2d 302, 353 n. 55 (7th Cir.1988). Once a trial has been completed and all the facts presented, it is almost always immaterial whether or not summary judgment should have been granted at an earlier point in the proceedings. *Watson,* 29 F.3d at 277. A court's ruling on summary judgment is only a determination of whether the case should go to trial, and "does not settle or even tentatively decide anything about the merits of the claim." *Id.* (citing *Switzerland Cheese Ass'n, Inc. v. E. Horne's Mkt., Inc.,* 385 U.S. 23, 25, 87 S.Ct. 193, 195, 17 L.Ed.2d 23 (1966)). "For this reason, the overwhelming majority of reviewing courts have held that they need not consider the propriety of an order denying summary judgment once there has been a full trial on the merits." *Id.* (listing cases).

This court has, however, recognized a rare exception to this rule in *Sears, Roebuck & Co.,* 839 F.2d at 354 n. 55. In *Sears,* the Equal Employment Opportunity Commission (EEOC) had employed a risky strategy, asserting before submitting a motion for summary judgment on particular claims that it would not try those claims if the motion were denied. *Id.* We determined that, in such a situation, disallowing appeal from that motion for summary judgment—which had the effect of ending any consideration of the claim in district court—would preclude all avenues of appeal. *Id.* Accordingly, this court reviewed the merits of the district court's denial of summary judgment. *Id.* However, we went on to state very clearly in *Watson,* 29 F.3d at 278, that "[a]bsent an extraordinary circumstance such as the one encountered in *Sears, Roebuck,* we will not review the denial of a motion for summary judgment once the district court has conducted a full trial on the merits of a claim."

■ Zahora has produced nothing to show that his counsel employed a strategy resembling that employed in *Sears,* nor that his case presents any "extraordinary circumstance" requiring a special exception. In order to reserve his *res judicata* defense for appeal, Zahora should have moved for judg-

ment as a matter of law under either Fed. R.Civ.P. 50(a)(1) after all the evidence had been heard, or under Fed.R.Civ.P. 50(b) after the jury returned with a verdict. *Id.* at 279. He did neither, and thus has waived any appeal based on a claim of *res judicata.*

Further, even had Zahora not waived his right to appeal the denial of summary judgment, the claim would fail on the merits. *Res judicata* is an affirmative defense, and the defendant thus has the burden of showing that the issue was already litigated and resolved elsewhere. *United States v. Fidelity and Deposit Co.,* 986 F.2d 1110, 1116 (7th Cir.1993). Zahora has made no such showing.

The doctrine of *res judicata* operates to prevent the litigation of any claim or ground of recovery that was available to a party in a prior action. *See Prime Management Co. v. Steinegger,* 904 F.2d 811, 815 (2nd Cir.1990). If another tribunal has already decided an issue, or could have decided an issue, then a subsequent action may not address the same issue and "invalidate rights previously established in the prior proceedings." *Fidelity and Deposit Co.,* 986 F.2d at 1116. Agency decisions may have a preclusive effect, but only in the limited area of factfinding. "[F]ederal courts must give the agency's *fact-finding* the same preclusive effect to which it would be entitled in the State's courts." *Univ. of Tennessee v. Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220, 3226, 92 L.Ed.2d 635 (1986) (emphasis added).

In this case, however, there was no hearing on the merits or factfinding by the IDHR prior to dismissal. The Allahars merely filed the case and then failed to complete the requisite paperwork for a voluntary dismissal. The IDHR's dismissal was certainly not based on the merits of the case nor did any factfinding occur at that juncture. The IDHR's dismissal was a self-defined action of administrative closure—a dismissal prompted by the Allahars' stated intent to withdraw the claim. This occurred before any factfinding or consideration of the case by the IDHR.

Further, Illinois law explicitly recognizes dual jurisdiction in cases appearing before the IDHR. A plaintiff is free to pursue his claim both with the IDHR and in a civil action so long as there has not yet been a hearing on the merits at the administrative level. 775 ILCS 5/10–102(3) & (4) ("An aggrieved party may commence a civil action under this subsection whether or not a charge has been filed [with the IDHR] and *without regard to the status of any such charge"* but an "[a]ggrieved party shall not commence a civil action ... with respect to an alleged civil rights violation which forms the basis of a. complaint issued by the [IDHR] if a hearing officer has commenced a hearing on the record under Article 3 of this Act with respect to such complaint.") (emphasis added). This statute is based on a requirement that one of the actions will be dismissed before a hearing on the merits is held. It would make little sense for the legislature to have allowed for this dual jurisdiction until the point of a hearing on the merits if it intended for an administrative dismissal to have preclusive effect at an earlier stage.

Zahora cites no law establishing that an administrative decision that does not amount to a finding of fact or a determination on the merits bars an action properly brought before another tribunal. Therefore, we conclude that the Allahars' claim was not barred by *res judicata.*

### III. PUNITIVE DAMAGES

The Allahars also cross-appeal, claiming that the district court abused its discretion in setting aside the jury's award for $7,500 in punitive damages. A plaintiff may be awarded punitive damages when "defendants acted wantonly and wilfully ... or were motivated in their actions by ill will, malice, or a desire to injure the plaintiffs." *Hamilton v. Svatik,* 779 F.2d 383, 389 (7th Cir.1985) (quoting *Jeanty v. McKey & Poague, Inc.,* 496 F.2d 1119, 1121 (7th Cir.1974)). An award of punitive damages should be set aside only if it exceeds an amount necessary to achieve the objective of punishment and deterrence. *Id.* However, "a punitive damage award ... may not constitute merely a windfall to the prevailing party." *Ramsey v. American Air Filter Co.,* 772 F.2d 1303, 1314

(7th Cir.1985). The district court has considerable discretion in deciding when punitive damages should be set aside, and we review such a decision only for abuse of that discretion. *Haluschak v. Dodge City of Wauwatosa, Inc.*, 909 F.2d 254, 256 (7th Cir.1990); *see also Webb v. City of Chester*, 813 F.2d 824, 836 (7th Cir.1987).

■ In setting aside the award, Judge Kocoras recognized that there was much "turmoil and heartbreak" surrounding this real estate transaction. *Allahar v. Zahora*, No. 92 C 5648, 1994 WL 113094 (N.D.Ill. March 30, 1994). However, he noted that Zahora had finally sold his house to the Allahars before trial—albeit after the temporary injunction had been imposed, but without any court order mandating the sale. Further, Judge Kocoras determined that, while Zahora's behavior was shameful and was in no way to be endorsed, the $10,000 in compensatory damages and the additional $20,000 in attorney's fees that Zahora was already required to pay constituted sufficient punishment. In addition, he considered that the Allahars had suffered few out-of-pocket costs and had received $10,000 in compensatory damages for their emotional injuries—thereby making the $7,500 in punitive damages a significant windfall for the Allahars.

We certainly do not condone Zahora's behavior, nor do we believe that it should or has gone unpunished. However, Zahora was a single individual with a single house to sell, not a large corporation or a rental agency. As a result of his discriminatory behavior, Zahora must pay $30,000 dollars out of his own pocket. It seems obvious that such a sum is highly punitive to a person of modest means, and, as the district court noted, will likely provide "adequate condemnation, punishment and deterrence to anyone else of like inclination." *Allahar v. Zahora*, No. 92 C 5648, 1994 WL 113094 (N.D.Ill. March 29, 1994). In light of the other damage awards against Zahora in this case, we cannot conclude that the district court abused its discretion in determining that the punitive damages award would have been a windfall to the plaintiff. The decision of the district court is therefore

AFFIRMED.