In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-3707

CHEMETALL GMBH,

*Plaintiff-Appellee,*

*v.*

ZR ENERGY, INC., JOSEPH T. FRAVAL,
and ARNOLD BERKOVITZ,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 4334—**Sidney I. Schenkier**, *Magistrate Judge.*

ARGUED JUNE 5, 2002—DECIDED FEBRUARY 25, 2003

Before FLAUM, *Chief Judge*, and DIANE P. WOOD and
WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* After Chemetall GMBH ac-
quired the assets of Morton International, Joseph T. Fraval
left Morton and formed a competing company, Zr Ener-
gy, Inc. Chemetall sued Fraval for breach of his agree-
ment with Morton to not use or disclose its confidential
information. A jury found in favor of Chemetall. Fraval
appeals the district court's denial of his motion to dis-
miss Chemetall's breach of contract claim, which the court
treated as a motion for summary judgment, and chal-
lenges certain of the court's evidentiary rulings and jury
instructions. Chemetall claims that the district court's

denial of Fraval's pretrial motion is unreviewable on appeal. We agree with Fraval that because the motion raised purely legal questions, we may review it on appeal. Nevertheless, we conclude that the motion was properly denied and finding no other error, affirm the judgment of the district court.

## I. BACKGROUND

Fraval was employed by Morton International (and its predecessors), where for 20 years he was involved in the production and marketing of zirconium powder, a chemical used in various pyrotechnic applications, including automobile air bags. Fraval signed an Employee Trade Secret Agreement with Morton in which he promised not to reveal confidential information regarding "improvements, inventions or know-how relating to" Morton's business. The agreement was to be effective during and after his employment and was to "inure to the benefit of [Morton's] successors and assigns."

Morton later sold its zirconium powder business to Chemetall. The Asset Purchase Agreement between Chemetall and Morton required Morton to keep secret the assets and information acquired by Chemetall and to have its employees undertake equivalent secrecy obligations. Three years after the sale, Fraval left Morton and, with Arnold Berkovitz, formed Zr Energy to produce and market zirconium powder.

Chemetall's amended complaint alleged that Fraval breached his confidentiality agreement with Morton, now enforceable by Chemetall by reason of its acquisition of Morton's zirconium powder business. It also alleged that

Fraval, Berkovitz, and Zr Energy[1] wilfully and unlawfully misappropriated trade secrets Chemetall acquired from Morton.[2] In response to the amended complaint, Fraval moved to dismiss the breach of contract count for failure to state a claim under Rule 12(b)(6). The court denied the motion, which it treated as one for summary judgment under Rule 56 because Fraval relied on material outside of the complaint, namely, his Employee Trade Secret Agreement with Morton and the Morton/Chemetall Asset Purchase Agreement.

At trial, after Chemetall presented its evidence, Fraval moved for judgment as a matter of law on the trade secret and contract claims, arguing that there was insufficient evidence that the process used by Zr Energy was derived from the process used at Morton. The district court denied that motion. Later, at the close of evidence, Chemetall moved for judgment as a matter of law on its breach of contract claim on the grounds that the intent of the parties was clear and that the issue of contract interpretation could be decided by the court. The court denied this motion as well, concluding that the jury should be allowed to decide the issue of the parties' intent to assign to Chemetall the right to enforce Fraval's Employee Trade Secret Agreement. After the jury returned a verdict in favor of Chemetall on both claims, Fraval again moved for judgment as a matter of law, this time arguing there was insufficient evidence to show that the duty of confidentiality he owed to Morton was transferred to Chemetall. The court denied the motion, holding that Fraval waived the issue by not making a motion on this

---

[1] For simplicity, we will refer to the various defendants as "Fraval."

[2] Other claims brought by Chemetall were dismissed before the case was submitted to the jury and are not at issue in this appeal.

basis before the case was submitted to the jury, and entered judgment in favor of Chemetall.

## II.  ANALYSIS

A.  Breach of Contract

On appeal, Fraval argues that the relevant contracts preclude Chemetall's claim that Fraval owed it an obligation of confidentiality. Fraval asks us to review the district court's denial of his Rule 12(b)(6) motion to dismiss Chemetall's contract claim, which raised this argument. Chemetall responds that the court treated this motion as one for summary judgment, that a court's denial of such a motion is unreviewable on appeal, and that Fraval waived the argument by not making it in his motions for judgment as a matter of law during and after trial.[3]

The district court treated Fraval's motion as one for summary judgment because Fraval attached to his motion the Employee Trade Secret Agreement and the Chemetall/ Morton Asset Purchase Agreement. *See* Fed. R. Civ. P. 12(b) (if, on a motion to dismiss for failure to state a claim, a party relies on matters outside the pleading, "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56").[4] But whether the

---

[3] Fraval's motions during and after trial challenged the sufficiency of the evidence; Fraval does not appeal the district court's denial of those motions.

[4] The court need not have treated the motion as one for summary judgment because it confined its analysis to the two contracts, the authenticity of which was not in doubt and which were referenced in Chemetall's complaint and central to its breach of contract claim. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998) ("'[D]ocuments attached to a motion to
(continued...)

motion was analyzed under Rule 12(b)(6) or Rule 56, the issue was one of contract interpretation: whether the written contracts precluded an assignment to Chemetall of Fraval's confidentiality agreement with Morton. Because this issue did not depend on an evaluation of the sufficiency of the evidence, we think the ordinary rationale for declining to review a denial of summary judgment does not apply in this case.

The general rule in this circuit and elsewhere is that, after a trial on the merits, the court of appeals will not review the district court's earlier denial of a motion for summary judgment. *See Watson v. Amedco Steel, Inc.*, 29 F.3d 274, 277 (7th Cir. 1994) (citing *Black v. J.I. Case Co.*, 22 F.3d 568, 570-71 (5th Cir. 1994); *Johnson Int'l Co. v. Jackson Nat'l Life Ins. Co.*, 19 F.3d 431, 434 (8th Cir. 1994); *Lama v. Borras*, 16 F.3d 473, 476 n.5 (1st Cir. 1994); *Whalen v. Unit Rig, Inc.*, 974 F.2d 1248, 1250-51 (10th Cir. 1992); *Bottineau Farmers Elevator v. Woodward-Clyde Consultants*, 963 F.2d 1064, 1068 n.5 (8th Cir. 1992); *Jarrett v. Epperly*, 896 F.2d 1013, 1016 (6th Cir. 1990); *Holley v. Northrop Worldwide Aircraft Servs., Inc.*, 835 F.2d 1375, 1377-78 (11th Cir. 1988); *Locricchio v. Legal Servs. Corp.*, 833 F.2d 1352, 1358-59 (9th Cir. 1987); *Glaros v. H.H. Robertson Co.*, 797 F.2d 1564, 1573-74 & n.14 (Fed. Cir. 1986)). This is because a denial of summary judgment is a prediction that the evidence will be sufficient to support a verdict in favor of the nonmovant. *Watson*, 29 F.3d at 277. Once the trial has taken place, our focus is on the evidence actually admitted and not on the earlier

---

[4] (...continued)

dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim'") (quoting *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994)); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

summary judgment record. *Id.*; *Johnson Int'l*, 19 F.3d at 434; *Locricchio*, 833 F.2d at 1359. "After trial, the merits should be judged in relation to the fully-developed record emerging from that trial. . . . We will not at that point step back in time to determine whether a different judgment may have been warranted on the record at summary judgment." *Watson*, 29 F.3d at 278 (citation omitted). Therefore, in order to preserve for appeal a challenge to the sufficiency of the evidence, the challenge must be raised in a Rule 50(a) motion for judgment as a matter of law before the case is submitted to the jury. *Id.* at 279; *see also Hudak v. Jepsen of Ill.*, 982 F.2d 249, 250 (7th Cir. 1992); *Rogers v. ACF Indus., Inc.*, 774 F.2d 814, 818 (7th Cir. 1985); *Ed Houser Enters., Inc. v. Gen. Motors Corp.*, 595 F.2d 366, 371 (7th Cir. 1978).

But when, as in this case, the court's denial of summary judgment is not based on the adequacy of the evidence, the justification we just described does not apply. *Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1318 (7th Cir. 1995); *see Gramercy Mills, Inc. v. Wolens*, 63 F.3d 569, 571-72 (7th Cir. 1995); *Ruyle v. Cont'l Oil Co.*, 44 F.3d 837, 842 (10th Cir. 1994) (noting "critical distinction between summary judgment motions raising the sufficiency of the evidence to create a fact question for the jury and those raising a question of law that the court must decide"); *White Consol. Indus., Inc. v. McGill Mfg. Co., Inc.*, 165 F.3d 1185, 1189-90 (8th Cir. 1999). For example, in *Rekhi*, we held that the defense of res judicata was not mooted by the district court's denial of summary judgment:

> [T]he principle that an order denying summary judgment is rendered moot by trial and subsequent judgment on the merits is intended for cases in which the basis for the denial was that the party opposing the motion had presented enough evidence to go to trial. Defenses are not extinguished merely because presented and denied at

> the summary judgment stage. If the plaintiff goes on to win, the defendant can reassert the defense on appeal.

61 F.3d at 1318. Other circuits have likewise reviewed on appeal a district court's denial of a motion for summary judgment in cases in which the motion raised legal issues other than the sufficiency of the evidence. *See Rose v. Uniroyal Goodrich Tire Co.*, 219 F.3d 1216, 1221 n.3 (10th Cir. 2000) (contract interpretation); *White Consol. Indus.*, 165 F.3d at 1189-90 (8th Cir. 1999) (same); *Pennbarr Corp. v. Ins. Co. of N. Am.*, 976 F.2d 145, 149-55 (3d Cir. 1992) (same) (reversing denial of motion for summary judgment after trial); *Pavon v. Swift Transp. Co.*, 192 F.3d 902, 906 (9th Cir. 1999) (res judicata); *United Techs. Corp. v. Chromalloy Gas Turbine Corp.*, 189 F.3d 1338, 1344 (Fed. Cir. 1999) (res judicata) (reversing judgment after trial); *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997) (governmental immunity); *Ruyle,* 44 F.3d 837, 841-42 (collateral estoppel).

The Fourth Circuit, however, has rejected any distinction between factual and legal issues like the one we drew in *Rekhi*, holding that in either case, review of the district court's denial of summary judgment is barred after trial. *See Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp.*, 51 F.3d 1229, 1236 (4th Cir. 1995). The court reasoned that it is often difficult to determine in a particular case whether the basis for the district court's denial of the motion was legal or factual and that the legal issue can be preserved for appeal by raising it in a motion for judgment as a matter of law under Rule 50. *Id.* We think this reasoning has merit in cases in which the basis for the court's denial of summary judgment may be difficult to discern, and therefore prudent counsel would do well to preserve the issue in a Rule 50 motion. *See Wolfgang v. Mid-America Motorsports, Inc.*, 111 F.3d 1515, 1521-22 (10th Cir. 1997). But if the legal ques-

tion can be separated from the factual one, then we see no bar to reviewing the legal question notwithstanding the party's failure to raise it in a motion for judgment as a matter of law at trial. *See Gramercy Mills, Inc. v. Wolens*, 63 F.3d 569, 571-72 (7th Cir. 1995) (appellate review of choice of law issue is appropriate because it is sufficiently distinct from determination of whether there are disputed issues of fact adequate to support a verdict); *White Consol. Indus.*, 165 F.3d at 1189-90; *Ruyle*, 44 F.3d at 841 ("A party who properly raises an issue of law before the case goes to the jury 'need not include the issue in a motion for a directed verdict in order to preserve the question on appeal.'") (quoting *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1370 (9th Cir. 1987)); *Wilson v. Union Pac. R.R.*, 56 F.3d 1226, 1229 (10th Cir. 1095).[5]

Chemetall does not contend that the issue raised by Fraval was directed at the sufficiency of the evidence but relies on *Allahar v. Zahora*, 59 F.3d 693, 695-96 (7th Cir. 1995), in which we refused to review on appeal the court's denial of summary judgment based on a res judicata defense. In *Rekhi*, however, we distinguished *Allahar* by noting that the concerns animating that decision were not at issue because the plaintiff in *Rekhi* did not argue that he was surprised by the res judicata defense or that the district court was improperly deprived of another chance to address the issue. *See Rekhi*, 61 F.3d at 1318. As in *Rekhi*, we conclude that the concerns ad-

---

[5] For completeness, we also note that the Eighth Circuit, in *Metropolitan Life Insurance Co. v. Golden Triangle*, 121 F.3d 351, 354 (8th Cir. 1997), had embraced the view expressed by the Fourth Circuit in *Chesapeake Paper Products Co.* That position was rejected two years later in *White Consolidated Industries,* 165 F.3d 1185, 1190 (8th Cir. 1999), although the inconsistency is not addressed in the later opinion.

dressed by the court's refusal to review the denial of summary judgment in *Allahar*—to avoid unfair surprise and to give the district court an opportunity to correct its own errors—do not apply in this case. Chemetall does not claim it was surprised by Fraval's continuing to assert his contract interpretation argument and the parties and the court were aware that the proper interpretation of the contract remained a live issue. Fraval renewed its arguments on this question during the conferences on jury instructions and the court referenced these arguments in denying Chemetall's Rule 50(a) motion made at the close of evidence. In that motion, Chemetall argued that the proper interpretation of the contract was a matter of law for the court, which gave the court the opportunity to revisit the issue it had decided adversely to Fraval at summary judgment.

Turning to the merits of the breach of contract claim, the parties agree that Illinois law applies. We review the court's interpretation of the contracts de novo, *Shelby County State Bank v. Van Diest Supply Co.*, 303 F.3d 832, 835 (7th Cir. 2002), and agree with the district court that the question whether Chemetall acquired the right to enforce Fraval's duty of confidentiality could not be decided based on the contracts alone and that the parties were therefore entitled to present evidence on the issue at trial.

Fraval's agreement with Morton was explicitly intended to "inure to the benefit of [Morton's] successors and assigns." "An assignment of a right is a manifestation of the assignor's intention to transfer a particular right by which the assignor's right to performance is terminated in whole or in part, and the assignee acquires the right." *Bd. of Managers of Medinah on the Lake v. Bank of Ravenswood*, 692 N.E.2d 402, 405 (Ill. App. Ct. 1998) (citing RESTATEMENT (SECOND) OF CONTRACTS § 317(1) (1981); *Season Comfort Corp. v. Ben A. Borenstein*

*Co.*, 655 N.E.2d 1065 (Ill. App. Ct. 1995)). The intent of the parties is a "'question of fact to be derived not only from the instrument executed by the parties, but also from the surrounding circumstances.'" *Young v. Chicago Fed. Sav. & Loan Ass'n*, 535 N.E.2d 977, 979 (Ill. App. Ct. 1989) (quoting *Klehm v. Grecian Chalet, Ltd.*, 518 N.E.2d 187, 191 (Ill. App. Ct. 1987)).

Fraval relies on two provisions of the Morton/Chemetall Asset Purchase Agreement that identify assets excluded from the sale. First, Fraval points to paragraph 9.13, which, he argues, excludes his Employee Trade Secret Agreement from the sale to Chemetall:

> No employee of Seller shall become an employee of Purchaser as a result of this transaction and Purchaser shall not assume any liability or obligation with respect to any employee of Seller, including, but not limited to, any employment or consulting agreement entered into by Seller.

We do not read this provision as negating an assignment to Chemetall of the right to enforce Fraval's confidentiality obligation. As applied to the Trade Secret Agreement, paragraph 9.13 means that Chemetall declined to assume Morton's obligations (that Chemetall declined to become his employer, for example), but it says nothing about whether Chemetall acquired Morton's rights—rights that are, according to the Trade Secret Agreement, assignable by Morton.

Second, paragraph 2(i) of the Asset Purchase Agreement generally excludes any assets not listed in the Agreement, and according to Fraval, his Trade Secret Agreement was not contained on the list of included assets. Confidential information relating to the acquired assets was, however, expressly included in the sale to Chemetall, and the obligations of Morton and its employees with respect to that information was also referenced in the Purchase Agreement:

> 18(a) After the Closing, Seller shall keep secret and retain in strictest confidence, and shall not use for the benefit of itself or others any of the subject Assets or information pertaining thereto and shall not disclose such information to anyone outside of the Purchaser. . . .
>
> (b) All of Seller's employees who have been active in the Business, at any time before the Closing Date, shall be bound to a secrecy undertaking in accordance with paragraph 18(a).

These terms do not conclusively establish the parties' intent with respect to Fraval's pre-existing confidentiality agreement; nevertheless, we think the terms are consistent with an intent to preserve those obligations for the benefit of Chemetall. We therefore agree with the district court that these terms do not foreclose an intent to assign Fraval's confidentiality agreement to Chemetall. Thus, the district court was correct to deny Fraval's pretrial motion and allow evidence on the question of the parties' intent.[6]

## B.  Exhibit 150

Fraval next claims that the court erred in excluding Exhibit 150, a document that Fraval asserts is a 1974 memo by an employee of Hughes Aircraft. The memo describes a visit to a facility of Morton's predecessor (Ventron) by representatives of the United States government, Hughes Aircraft, and others involved in a Department of Defense project that used zirconium powder.

---

[6] Chemetall introduced evidence at trial that both Morton and Chemetall intended that the confidentiality agreement be assigned, and as noted above, Fraval is not challenging on appeal the sufficiency of that evidence.

The document was addressed to various individuals who attended the meeting and also contained a handwritten notation routing the document to Dr. Donald Smith. Dr. Smith, who attended the 1974 meeting, was retained by Chemetall as an expert witness in this case and the document, with the handwritten notation, was obtained during discovery from his files. Fraval sought to introduce the memo to show that the process for producing zirconium powder was not confidential and was in fact publicly disclosed.

The district court held that the document was not authenticated and excluded it, a ruling we review for abuse of discretion. *See United States v. Kairys*, 782 F.2d 1374, 1379 (7th Cir. 1986). Documents are authenticated by evidence "sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). The Rule identifies the following evidence as sufficient to authenticate "ancient documents":

> Evidence that a document . . . (A) is in such condition as to create no suspicion concerning its authenticity, (B) was in a place where it, if authentic, would likely be, and (C) has been in existence 20 years or more at the time it is offered.

Fed. R. Evid. 901(b)(8). Dr. Smith was not identified as a recipient in the typed distribution list on the document, and was unable to say who sent him the document or how it came to be in his files. Without his name on the original distribution list, and without knowing the source of the handwritten notation and when it was added, or the source of Smith's copy of the document, it was reasonable for the district court to conclude that Dr. Smith's files were not where one would expect to find an authentic copy of the document. *See Dartez v. Fibreboard Corp.*, 765 F.2d 456, 464 (5th Cir. 1985) (court did not abuse discretion in excluding corporation's correspon-

dence not found in the corporation's files). We therefore find no abuse of discretion, even though a contrary conclusion on this evidence might also have been reasonable. *See United States v. Manos*, 848 F.2d 1427, 1429 (7th Cir. 1988) ("an abuse of discretion only occurs where no reasonable person could take the view adopted by the trial court").

C.  The Jury Instructions

The district court instructed the jury that, in order to prevail on its breach of contract claim, Chemetall had to prove that it was entitled to enforce Fraval's confidentiality obligation with Morton:

> [P]laintiff must prove that there was an intent for plaintiff to become the assignee or successor to that confidentiality obligation. Intent may be proven by direct or circumstantial evidence.

Fraval makes three challenges to this instruction, none of which merits extended discussion. First, Fraval asserts that on the question of whether his trade secret agreement was assigned to Chemetall, the Asset Purchase Agreement was parol evidence and the court's instruction improperly allowed the jury to consider it. We have our doubts whether this challenge was properly preserved, but in any event, the Asset Purchase Agreement was not improper parol evidence because it was not offered to shed light on the meaning of Fraval's Trade Secret Agreement, but rather as evidence of whether that agreement was in fact assigned to Chemetall as part of the sale. Because the Asset Purchase Agreement was evidence of whether the parties intended such an assignment, there was no error in allowing the jury to consider it. *See Young*, 535 N.E.2d at 979 (intent may be proved by the "instrument executed by the parties" to the assignment and by the surrounding circumstances).

Second, Fraval argues that the instruction allowed the jury to find an assignment even though Morton retained some of the rights under its agreement with Fraval, and that such a partial assignment is invalid. This is plainly incorrect; an assignor may transfer some or all of its rights, *see Klehm*, 518 N.E.2d at 191, and if only part of a right is transferred, that part may be enforced by the assignee as if it were a separate right. *See* RESTATEMENT (SECOND) CONTRACTS § 326. Morton could thus retain the right to enforce Fraval's duty to maintain the secrecy of information relating to assets not transferred to Chemetall, and assign to Chemetall the right to enforce the duty for information relating to the assets sold. Such an assignment had no effect on Fraval's performance; after the assignment his obligation remained the same as it was before—to maintain the confidentiality of information relating to both types of assets. *See* RESTATEMENT (SECOND) CONTRACTS § 317 (assignment of right permitted unless the substitution of the assignee would materially change the duty of the obligor).

Third, Fraval contends that the instruction would allow the jury to find an assignment even though Fraval's agreement was in the form of a personal services contract. This argument is based on the principle that a contracting party's duty to perform may not be delegated if the person to whom performance is owed has a substantial interest in having it performed by a particular person, as in a personal services contract. *See* Arthur Linton Corbin, 9 CORBIN ON CONTRACTS § 865 at 389-90 (interim ed. 2002); RESTATEMENT (SECOND) CONTRACTS § 318. Here, however, there was no assignment of Fraval's duty of performance but only of Morton's right to enforce that duty. *See Olson v. Etheridge*, 686 N.E.2d 563, 567 (Ill. 1997) (making distinction between assignment of right and delegation of duty). As we noted above, Fraval's performance was in no way affected by the identity of

the party entitled to enforce that performance, so the jury instruction was not infirm for failing to distinguish personal services contracts.

### III. CONCLUSION

We find no error sufficient to disturb the jury's verdict in favor of Chemetall on its breach of contract claim. Defendants' other issue on appeal, which seeks a new trial on the trade secret claim, depends on our setting aside the verdict on the breach of contract claim. We therefore need not consider the issue. The judgment of the district court is AFFIRMED.

A true Copy:

      Teste:

                        _____
                        *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*