In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-3149

PROLITE BUILDING SUPPLY, LLC, *et al.*,

*Plaintiffs-Appellants*,

*v.*

MW MANUFACTURERS, INC., doing business as Ply Gem Windows,

*Defendant-Appellee*,

*and*

GREAT LAKES WINDOW, INCORPORATED,

*Third-Party Plaintiff-Appellee*.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
Nos. 15-C-1049, 15-C-1205 — **Lynn Adelman**, *Judge*.

ARGUED MARCH 30, 2018 — DECIDED MAY 22, 2018

Before EASTERBROOK and ROVNER, *Circuit Judges*, and
GILBERT, *District Judge*.[*]

_____

[*] Of the Southern District of Illinois, sitting by designation.

EASTERBROOK, *Circuit Judge*. Prolite Building Supply bought Ply Gem windows from MW Manufacturers. (The parties use "Ply Gem" for both the product and its maker; we do the same.) Prolite resold the windows to residential builders in Wisconsin. Some of the homeowners were not satisfied with the windows, which admitted air even when closed. They complained to the builders, which complained to Prolite, which complained to Ply Gem. Working together under a contract that made Prolite the windows' principal servicer, Prolite and Ply Gem solved some but far from all of the problems. Contractors stopped buying from Prolite, which stopped paying Ply Gem for earlier deliveries.

Prolite and 12 homeowners filed suit in state court. Prolite contended that Ply Gem broke a promise to make the builders and ultimate customers happy. The homeowners made claims under the warranties that accompanied the windows. Ply Gem removed the action to federal court and counterclaimed against Prolite for unpaid bills. It added Andrew Johnson and Michael Newman, Prolite's only two members, as additional parties. (Johnson and Newman had guaranteed payment of Ply Gem's invoices.) Great Lakes Window, a company affiliated with Ply Gem, filed its own federal suit against Prolite, Johnson, and Newman, seeking to collect other invoices. Additional homeowners intervened in the removed suit. The district court consolidated these actions, and the caption that begins this opinion names the main contestants without going into excessive detail.

The district court granted summary judgment to Ply Gem and Great Lakes. 2017 U.S. Dist. LEXIS 220922 (E.D. Wis. Sept. 18, 2017). The judge found that the parties are of diverse citizenship. (Prolite's members are citizens of Wiscon-

sin, so Prolite itself is a citizen of Wisconsin, as are all of the homeowner parties, while Ply Gem and Great Lakes are incorporated in Delaware (Ply Gem) or Ohio (Great Lakes) with their principal places of business in North Carolina.) Prolite's initial claim against Ply Gem comfortably exceeds $75,000; Ply Gem's counterclaim exceeds $180,000; Great Lakes' claim exceeds $260,000. None of the homeowners' claims exceeds $75,000, so none meets the diversity jurisdiction (aggregation of different litigants' claims is not allowed, see *Snyder v. Harris*, 394 U.S. 332 (1969)), but the district judge wrote that "the claims of the homeowner plaintiffs are part of the same case or controversy as Prolite's claim against Ply Gem" and come within the supplemental jurisdiction. 28 U.S.C. §1367(a). We'll return to that question, but we start with the contract claims and counterclaims.

Ply Gem and Prolite had three contracts: a sales agreement, a credit agreement, and a service agreement (the "Service Rebate Obligation"). Prolite concedes that it does not have any defense to the claims for payment by Ply Gem and Great Lakes, which rest on the credit agreement, unless it can show that Ply Gem broke its promises under the service agreement. The service agreement requires Prolite to repair the Ply Gem windows that the contractors installed. In exchange, Ply Gem gave Prolite a 3% discount on the windows' price and promised to furnish needed parts at no cost. Prolite says that it spent about $290,000 trying to fix the troublesome windows but concedes that it received the 3% discount and all the parts it requested. Another portion of the service agreement provides that in the event of "excessive" problems (an undefined term) Ply Gem would furnish additional aid, including complete window reinstallation, for a price to

be negotiated. Prolite never asked Ply Gem to replace windows under this clause.

Prolite contends that what Ply Gem should have done was either reinstall all of the windows, without specific requests, or design a new line of windows with better attributes and replace the old windows with the new ones, again without requests. Only those two steps could have kept the customers happy, Prolite insists. The problem, as the district judge observed, is that the service agreement does not require Ply Gem to keep the customers happy. (That's the function of the warranties.) Instead the service agreement requires *Prolite* to keep the customers happy by performing repairs in exchange for a discount. The district court's opinion meticulously discusses the contractual language. It is not necessary to repeat that analysis in the Federal Reporter. Nor need we repeat the district court's convincing resolution of the dispute about expert evidence that Prolite proffered.

The homeowners' claims, by contrast, pose a knotty problem. They can be resolved under the supplemental jurisdiction only if they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a). The statute does not define "case or controversy," nor does Article III. Courts often ask whether the claims share a common nucleus of operative facts. See, e.g., *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008). This jiggles the vagueness problem around a little without solving it. The same phrase is used in the law of preclusion. It does real work and can handle many disputes, but not by prescribing an algorithm. It tells us that "enough" commonality makes for a controversy but does not dictate

the solution to any case. So, for example, supplemental jurisdiction is appropriate when the supplemental claim involves the same parties, contracts, and course of action as the claim conferring federal jurisdiction. *Channell v. Citicorp National Services, Inc.*, 89 F.3d 379, 385–86 (7th Cir. 1996); *Stromberg Metal Works, Inc. v. Press Mechanical, Inc.*, 77 F.3d 928, 932 (7th Cir. 1996). *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995), adds that "[a] loose factual connection between [ ] claims is generally sufficient" to confer supplemental jurisdiction. How loose is that? What does enough commonality really mean? Still, unless there is a phrase better than "nucleus of operative facts," there's no point in complaining. No one has come up with a better phrase, despite a lot of trying, so we apply this one as best we can.

*CNH Industrial America LLC v. Jones Lang LaSalle Americas, Inc.*, 882 F.3d 692, 701–04 (7th Cir. 2018), suggests that, in an action by a manufacturer for a breach-of-contract claim, the court would also have supplemental jurisdiction over dealerships' independent breach-of-contract claims. That at least entails a single contract and closely related parties. There's less commonality here. What the contract and warranty claims have in common is that they concern Ply Gem windows. But that is all they share. The language of the warranty (three warranties, actually, for three series of windows) and the service agreement do not overlap. The parties to the agreements overlap through Ply Gem, but the grievances do not. Prolite complained that Ply Gem did not do enough to ensure that *its* customers (the builders) remained willing to purchase Ply Gem windows. The homeowners, by contrast, just wanted to stop drafts and moisture. Each homeowner's claim presented a different problem. Some could be fixed, some not. The nature of the work done differed. The losses

differed. There may well be savings from litigating the homeowners' claims together, because they have some things in common with each other, but it is impossible to say that Prolite's claim and the homeowners' claims are just one big controversy. The operative facts differ, as do the contractual terms.

Prolite might have been able to make the imbroglio a single case or controversy by framing a contract theory that turned on the merits of the homeowners' warranty claims. If Prolite had alleged, for example, that Ply Gem refused to acknowledge that the homeowners had warranty claims, preventing Prolite from complying with its obligations under the service agreement, then the warranty claims would have been integral to the whole dispute. But Prolite didn't make any such allegations. The homeowners' claims therefore cannot proceed under the supplemental jurisdiction.

What happens now? Ply Gem asks us to affirm the judgment on Prolite's claims (and the counterclaims) and send the homeowners' claims back to state court. Prolite and the homeowners, however, want us to vacate the whole judgment and remand the whole case.

If the dispute between Prolite and Ply Gem were one under federal law, then 28 U.S.C. §1441(c) would supply the solution. The federal claim would make the whole suit removable, and §1441(c)(2) would require the immediate remand of any state-law claim not within the supplemental jurisdiction. The Judicial Code does not contain a parallel provision for the combination of a diversity claim that is within federal jurisdiction and a diversity claim that is not. The dispute between Prolite and Ply Gem was removable in principle, see §1441(a), and nothing in the chapter on remov-

al (28 U.S.C. §§ 1441 to 1455) suggests that the presence in a state case of an *additional* claim worth less than $75,000 (and not part of the same case or controversy as the first) blocks removal of a claim otherwise within federal jurisdiction.

The way §1441(c) treats the combination of removable and non-removable claims implies that there is no *jurisdictional* obstacle to removing the whole suit and sending the surplus claims back to state court. Section 1447(c) tells us that a motion to remand on the basis of any ground other than the absence of subject-matter jurisdiction is forfeited if not made within 30 days after the filing of the notice of removal. Prolite and the homeowners did not argue in the district court, during those 30 days, that the homeowners' claims are outside the supplemental jurisdiction and that the whole suit was therefore not properly removed. In this court Prolite and the homeowners initially represented that the entire case comes within federal jurisdiction, only to change their minds after the supplemental-jurisdiction issue was raised at oral argument. *Grubbs v. General Electric Credit Corp.*, 405 U.S. 699 (1972), tells us that once a removed case has gone to judgment, the decision should stand even if an immediate remand would have been proper.

Imagine what would have happened if the original suit had begun in federal court. The diversity jurisdiction of 28 U.S.C. §1332 would have covered the dispute between Prolite and Ply Gem. The tag-along homeowners' claims should have been dismissed. The Supreme Court has never suggested that the presence of one claim under the jurisdictional amount prevents the resolution of other claims that exceed it, if complete diversity is present. See *Clark v. Paul Gray, Inc.*, 306 U.S. 583, 590 (1939).

What's more, we cannot forget that we have two suits, the second one (by Great Lakes) filed initially in federal court with both complete diversity and stakes exceeding $75,000 for every litigant. Each of these consolidated suits must be considered independently. *Hall v. Hall*, 138 S. Ct. 1118 (2018). The dispute between Prolite and Ply Gem could be resolved under the supplemental jurisdiction in the suit by Great Lakes no matter what one makes of the homeowners' claims.

The judgment of the district court is affirmed, except with respect to the homeowners' claims. The judgment dealing with those claims is vacated, and the case is remanded to the district court with instructions to remand them to state court.