## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
July 6, 2020

Lyle W. Cayce
Clerk

No. 20-20188

S J ASSOCIATED PATHOLOGISTS, P.L.L.C.,

      Plaintiff - Appellant

v.

CIGNA HEALTHCARE OF TEXAS, INCORPORATED; CONNECTICUT
GENERAL LIFE INSURANCE COMPANY; CIGNA HEALTH AND LIFE
INSURANCE COMPANY,

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before DENNIS, SOUTHWICK, and HO, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

This case involves state-law claims between a health insurance company and a medical services provider. Although the parties dispute the propriety of various actions taken by the federal district court after the case was removed from Texas state court, we do not reach these points. Because the claims between the plaintiff-appellant and defendant-appellee do not derive from the same "nucleus of fact" as the federal claim that was the sole source of the district court's original jurisdiction, *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966), the district court lacked supplemental jurisdiction over these state-law claims. We therefore VACATE the district court's final

No. 20-20188

judgment compelling arbitration and dismissing the case and REMAND the
case with instructions that the case be remanded back to the state court.

## I.

## A.

S J Associated Pathologists ("SJAP") is a Houston-area anatomic and
clinical pathology group that provides diagnostic lab testing at a number of
local hospitals. On May 1, 2002, SJAP and Cigna Healthcare of Texas
("Cigna") entered into a "Group Practice Managed Care Agreement" ("the In-
Network Agreement") under which SJAP became an in-network provider for
Cigna's customers.[1]

In 2019, Cigna requested documentation of fifty randomly selected
claims that it had paid to SJAP on behalf of its customers as part of an audit
of its billing practices. Cigna sent its initial request to St. Joseph's Medical
Center, a hospital out of which SJAP had operated at the time it entered into
the In-Network Agreement. SJAP had ended its relationship with St. Joseph's
in 2012, and, based on St. Joseph's response to the audit inquiry, Cigna placed
a "flag" on SJAP's account that caused all future claims filed by SJAP to be
automatically denied.[2] SJAP eventually received notice of the audit and
provided Cigna with documentation of thirty-five of the identified claims,
stating that the records of the remaining fifteen were in the hands of a third-
party hospital and that it was unable to obtain them in time for the audit.

Cigna claims that the audit revealed that SJAP had been engaging in
"pass-through" billing, or billing Cigna for services that were rendered by third

---

[1] In exchange for their billing Cigna for medical services at a negotiated rate, Cigna
refers its customers to in-network providers for their medical care and charges customers a
lower co-payment for treatment rendered by in-network providers, making in-network
providers more attractive to Cigna customers.

[2] Cigna alleges that SJAP had failed to provide Cigna with timely notice of its change
in location as the In-Network Agreement required.

2

parties, which Cigna asserts is prohibited by the In-Network Agreement. Because 100% of the audited transactions used this billing structure, Cigna demanded repayment of all claims that it had paid to SJAP between January 1, 2015 and April 3, 2019, totaling $4,628,601.07. The letter noted that the auto-denial flag would be maintained until SJAP refunded the full amount demanded. SJAP continued to provide services to Cigna customers and submit claims that were automatically denied during the coming months. When negotiations ultimately proved fruitless, Cigna sent SJAP notice that it was terminating the In-Network Agreement pursuant to the "without cause" termination clause, effective January 29, 2020.

## B.

### 1.

In response to the termination letter, SJAP filed suit against Cigna in Texas state court, asserting a range of state statutory and common law claims. After the state trial court denied SJAP's initial application for a temporary restraining order, Cigna sent SJAP a letter formally invoking the allegedly mandatory arbitration clause in the In-Network Agreement. SJAP declined to voluntarily dismiss its case, and Cigna proceeded to file a motion to compel arbitration.

While the motion to compel arbitration was pending, SJAP amended its petition to add Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (collectively, the "Cigna Affiliates"), along with Insight Labs, LLC ("Insight"), Sim-Meds, Inc., and Justin Simons (collectively, the "Insight Defendants") as defendants, alleging federal securities violations against the Insight Defendants under the Securities Exchange Act of 1934. According to allegations in its amended complaint, Cigna entered into a separate agreement in 2017 with Insight to acquire a 7.5%

ownership share in the company and to take over operation of a lab location in Dallas on behalf of Insight Labs ("the Lab Operating Agreement"). SJAP claims that Insight, its parent company, and the parent company's owner all failed to make required payments and disclosures both before and after entering into the Lab Operating Agreement. SJAP further asserts that, without informing SJAP, Insight Labs entered into a confidential settlement agreement in 2018 with the Cigna Affiliates to release claims that Insight Labs had fraudulently billed Cigna for pathology services prior to SJAP taking over operation of the lab. Importantly, these claims bear no apparent connection to those against Cigna.

Following the amendment of SJAP's complaint, Cigna amended its motion to compel arbitration to add a request that the state trial court sever SJAP's claims against it from those asserted against the Insight Defendants. The state trial court denied Cigna's motion to compel arbitration without explaining its reasoning. Cigna perfected an interlocutory appeal of the denial to the Texas First Court of Appeals, which denied Cigna's emergency motion for a stay of proceedings in the trial court.

Thereafter, the state trial court held an evidentiary hearing on SJAP's application for a temporary injunction and granted the application. Concluding that SJAP was likely to prevail on its claims against Cigna because credible evidence indicated SJAP had never engaged in pass-through billing, the court ordered Cigna to, *inter alia*, continue the In-Network Agreement, pay SJAP for all automatically rejected claims, and adjudicate SJAP's future claims based on their individual merits. Cigna perfected a second interlocutory appeal to the Texas First Court of Appeals, this time challenging the trial court's temporary injunction.

**2.**

While the two state appeals remained pending, Cigna consented to the Insight Defendants' removal of the case to the United States District Court for the Southern District of Texas.  The Insight Defendants asserted federal question jurisdiction as the basis for removal, citing the federal securities claims SJAP had raised against them.

Once in federal court, Cigna filed a motion to vacate or modify the temporary injunction granted by the state trial court.  At a hearing on the motion, the district court *sua sponte* stayed operation of the temporary injunction and ordered briefing on its jurisdiction and on the In-Network Agreement's arbitration provision.  Thereafter, Cigna again filed a motion to compel arbitration.

Meanwhile, SJAP voluntarily dismissed all claims against the Insight Defendants—including the federal securities claims that were the basis for removal—and then moved to remand the case to state court.  The district court held a hearing on all three pending motions on February 28, 2020.  The district court concluded that it was free to reconsider the state court's orders and orally granted Cigna's motion to compel arbitration.  The district court denied Cigna's motion to vacate the temporary injunction and SJAP's motion to remand as moot and dismissed the case without prejudice.  SJAP timely appealed.

**II.**

This court reviews a district court's subject matter jurisdiction *de novo*, applying the same standards as the district court. *See Nat'l Football League Players Ass'n  v. Nat'l Football League*, 874 F.3d 222, 225 (5th Cir. 2017).

**III.**

In their briefing, the parties raise at least three distinct issues, including whether the district court should have remanded the case to state court after all federal claims were voluntarily dismissed, whether the district court had

No. 20-20188

jurisdiction to reconsider the state court's interlocutory orders that were the subject of pending appeals prior to removal, and whether the In-Network Agreement's arbitration clause was mandatory. But a threshold jurisdictional issue not raised by the parties is dispositive.[3]

Subject to limited exceptions not here applicable, any civil action brought in state court "that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing 28 U.S.C. § 1441). This includes cases like this one, in which the requirements for diversity jurisdiction are not met but at least one asserted claim falls within the district court's federal question jurisdiction because it is based in federal law. *Id.* (citing 28 U.S.C. § 1331). After such a case is removed, the federal court may elect to exercise jurisdiction over any state-law claims in the case *only if those claims meet the requirements for supplemental jurisdiction under 28 U.S.C. § 1367(a). See Venable v. Louisiana Workers' Comp. Corp.*, 740 F.3d 937, 944 (5th Cir. 2013).

28 U.S.C. § 1367(a) grants the district court supplemental jurisdiction "in any civil action of which the district courts have original jurisdiction . . . over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." "The question under section 1367(a) is whether the supplemental claims are so related to the original

---

[3] "[F]ederal courts must address jurisdictional questions whenever they are raised and must consider jurisdiction *sua sponte* if not raised by the parties." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001) (citing *Kidd v. Southwest Airlines, Co.*, 891 F.2d 540, 546 (5th Cir.1990)); *see also* 28 U.S.C. § 1447(c) (specifying that a motion to remand for a lack of subject matter jurisdiction cannot be waived and that the case must be remanded to state court if at any time it appears the district court lacks subject matter jurisdiction); *Grubbs v. Gen. Elec. Credit Corp.*, 405 U.S. 699, 702–03 (1972) (contrasting a defect in removal requirements with a defect in subject matter jurisdiction, the latter of which remains an issue on appeal despite not being objected to in district court).

claims that they . . . 'derive from a common nucleus of operative fact.'" *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)).

All of SJAP's claims against Cigna arise from or concern the In-Network Agreement and the resulting business relationship. SJAP's federal claim against the Insight Defendants, by contrast, was based on SJAP's purchase of securities from Insight as part of the Lab Operating Agreement, a completely separate contract that had nothing to do with Cigna that was consummated several years before the events giving rise to SJAP's claims against Cigna. Other than SJAP's vague assertion that Insight and the Cigna Affiliates previously "had a lengthy and sordid relationship" that resulted in an undisclosed settlement agreement, the operative complaint when the case was removed demonstrated no connection between Cigna and the Insight controversy, let alone the specific federal security claim that conferred original jurisdiction on the district court. Indeed, Cigna itself argued in its motion to sever that "[t]he claims against the Cigna Defendants and Insight Defendants have no relation to one another and, even if tried together, would be decided on evidence that would have no bearing on the claims asserted against the other." The standard for supplemental jurisdiction is clearly not met here.

When the requirements of original or supplemental jurisdiction are not satisfied, 28 U.S.C. § 1441(c)(2) governs the disposition of the extraneous state law claims. The provision makes clear that immediately upon removal, "the district court shall sever from the action all claims" that are not within its original or supplemental jurisdiction "and shall remand the severed claims to the State court from which the action was removed." 28 U.S.C. § 1441(c)(2).

Thus, because SJAP's state-law claims against Cigna did not fall within the district court's supplemental jurisdiction, the district court had no

discretion to retain the claims in federal court and was required to immediately remand them. *See Prolite Bldg. Supply, LLC v. MW Manufacturers, Inc.*, 891 F.3d 256, 259 (7th Cir. 2018) ("The federal claim would make the whole suit removable, and § 1441(c)(2) would require the immediate remand of any state-law claim not within the supplemental jurisdiction."). The district court therefore erred in ruling on the motion to compel arbitration rather than immediately remanding SJAP's claims against Cigna.

**\* \* \***

Based on the foregoing, we VACATE the district court's final judgment compelling arbitration and dismissing the case and REMAND to the district court with instructions that the case be remanded to state court.